IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TONY BLAKELY, | ) |
| Plaintiff, | ) |
| v. | ) Nos. 3:01-1186, 3:04-0603 |
| | ) JUDGE HAYNES |
| CITY OF CLARKSVILLE, | ) |
| Defendant. | ) |

## MEMORANDUM

Plaintiff, Tony Blakely, filed this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S. § 2000e et seq., against the Defendant, City of Clarksville. Blakely asserts claims that the City of Clarksville's police department denied him a promotion to the rank of sergeant in 2000; discriminated against him based upon his race in administering its disciplinary policy; allowed a racially hostile environment to exist at its police department; and retaliated against him for exercising his Title VII rights. Plaintiff also asserts state law claims of outrageous conduct and malicious harassment.

After the proof at the trial of this consolidated action, the jury returned a verdict for the Plaintiff awarding him a total of $325,000 against the City of Clarksville Police Department on his claims except for his denial of promotion claim. See Docket Entry No. 138.

Before the Court are several post-trial motions: the Defendant's renewed and consolidated motion for judgment as a matter of law, a new trial and for remittitur (Docket Entry No. 140)[1]; Plaintiff's motion to alter judgment (Docket Entry No. 22); Plaintiff's motion for back pay (Docket Entry No. 23); and Plaintiff's motion for attorney fees and costs (Docket Entry No.

---

[1] This motion was filed in the 3:01-1186 action.

24). Plaintiff has outstanding motions for extensions of time (Docket Entry Nos. 45 and 46)[2], but the pending substantive motions need to be decided given the length of this proceedings and those latter motions will be denied as moot.

### A. Defendant's Motion for Judgment as a Matter of Law or New Trial

As to the Defendant's motion for new trial, the City of Clarksville asserts numerous grounds that in summary, are: (1) that the jury's verdict is contrary to the evidence; (2) that the Plaintiff failed to provide certain audio tapes timely to the Defendant as directed by the Court; (3) that as a matter of law and fact, Plaintiff cannot recover from the Defendant on his outrageous conduct and malicious harassment claims; (4) that the Court erroneously admitted the Equal Employment Opportunity Commission's ("EEOC") finding; and (5) that the Court erred in admitting testimony of statements of co-employees.

On a motion for new trial, the Court is to decide if the jury could reasonably reach the verdict based upon the evidence, Powers v. Bayliner Marine Corp., 83 F.3d 790, 798 (6th Cir. 1996). A trial court cannot substitute its judgment on credibility for the jury's determinations. Anderson v. Conwood Co., 34 F. Supp. 2d 650, 653 (W.D. Tenn. 1991). Upon a motion for new trial, the Court is not to set aside the jury verdict absent a showing of a "seriously erroneous result." Holmes v. City of Massillon, Ohio, 78 F.3d 1041, 1046 (6th Cir. 1996) or where the jury verdict "resulted from passion, bias or prejudice." Farber v. Massillon Bd of Educ., 917 F.2d 1391, 1395 (6th Cir. 1990). The evidence is also reviewed, "most strongly in a light in favor of the verdict." Ross v. Meyers, 883 F.2d 486, 487 (6th Cir. 1989).

To prevail on a motion for judgment as a matter of law, the trial court must review the

---

[2]The latter motions were filed in 3:04-0603.

Case 3:01-cv-01186 DOCUMENT 148 Filed 02/02/06 Page 2 of 14 PageID #: 116

evidence and conclude that the evidence "points so strongly in favor of the movant that reasonable minds could not come to a different conclusion; then the motion should be granted." Black v. Ryder/P.I.E. Nationwide, Inc., 970 F.2d 1461, 1470 (6th Cir. 1990).

First, the Court concludes that Plaintiff's proof amply supported the jury's verdict on his claims under Title VII for racial harassment and retaliation, as well as his state law claims for outrageous conduct and malicious harassment. In a word, another jury reached the same result in a parallel action presenting common claims and proof. Austion v. City of Clarksville, No. 3:03-0854 (Docket Entry No. 97, Order reflecting, inter alia a jury verdict of $300,000). Aside from Plaintiff's testimony of the offensive conduct directed at him, the testimony of his co-employees about other racially offensive and retaliatory conduct, even if not directed at the plaintiff, can establish a hostile work environment claim, Jackson v. Quanex Corp., 191 F.3d 647, 660-61 (6th Cir. 1999), particularly where, as here, the Plaintiff was aware of racially offensive conduct directed at other African-American employees in his unit and department. Abeita v. TransAmerica Mailings Inc., 159 F.3d 246, 249, n.4 (6th Cir. 1993).

Second, as to the Defendant's repeated challenge to the admission of the EEOC charge, this issue remains subject to the Court's discretion. Heard v. Mueller Co., 464 F.2d 190 (6th Cir. 1972). The Court reiterates its rationale at trial that the EEOC report was properly admissible here as an aid to the jury in its evaluation of the proof on Plaintiff's claim of a racially hostile work environment. Although the Court does not usually admit such reports, one of Plaintiff's claim is for a racially hostile work environment. In the Court's view, the EEOC investigated Plaintiff's complaint and issued its report. This report represented an opinion of an agency that specializes in such matters. The Court's view was that the jury may be aided in its evaluation of

3

the proof with the admission of this opinion and finding on a subject with which the jurors may be unfamiliar. With its introduction, the Court instructed the jury that the EEOC opinion may not have had the same evidence as before them and jury was to consider that report with all of the other evidence at trial and could disregard that opinion or any opinion if the jury deemed that the opinion lacked merit in light of all the proof. The Court notes that on cross-examination of the City's human relations representative, defense counsel elicited testimony on EEOC's findings on othe officers' EEOC charges.

As to Plaintiff's counsel's failures to produce timely audio tapes at trial, the Case Management Order required any discovery disputes to be presented by January 30, 2005. (Docket Entry No. 125) On July 25, 2005, the City filed a motion for a status conference. (Docket Entry No. 12), but did not file a motion to compel on this tapes issue until August 8,2005 (Docket Entry No. 14 in Case No. 3:04cv603), the day before trial. On August 3,2005, the Court held a conference and at that conference discussed, among other issues, the production of tapes that Plaintiff created by recording his conversations with City employees and officials. At that conference, the Court directed Plaintiff's counsel to produce the tapes forthwith. On August 11th, the City's counsel raised the issue of Plaintiff's counsel's non-compliance with that directive on the third trial. At that time, the discussion revealed that in fact, Plaintiff had disclosed the existence of the tape in his interrogatory answer early in this litigation. In addition, Plaintiff advised that he had actually delivered the tapes to the City's prior counsel in this action and that all tapes had been delivered to the City. Defense counsel did not dispute this statement.

In any event, Plaintiff's counsel delivered a CD of the tapes to defense counsel at trial on Thursday, August 11th. The Court offered to compel the attendance of any non-party witness

4

who was on the tape and whom the City wanted to call as a witness. The Court afforded defendant's counsel an opportunity to review the tapes. The Court notes that the Friday trial session was abbreviated and Defense counsel had the weekend to review the tapes. The City has had two private defense firms in this action, had two counsel at trial, had paralegal assistance, the City's legal department and its police department, as additional resources. The City had ample time and resources to review these tapes for use at trial. On Monday, Defense counsel did not ask for additional time nor did defendant's counsel elect to recall any of the witnesses on these tapes for any impeachment evidence. Most of the voices on the tapes were of City officials and employees. Plaintiff did not offer these tapes into evidence. The Court excluded as proof any documents that Plaintiff had not provided on discovery. This contention lacks merit.

As to the alleged error in the admission of testimony of a racial slur by the City's Chief of Police, John William Hunt, a City police sergeant testified that in the late 1980s, after an African-American officer filed a charge of discrimination, the City's now Chief of Police commented in his presence, "you know how those niggers are". Hunt's trial testimony was that some twelve years later, and after the current complaints by African-American officers, the Chief approached Hunt to apologize for his racial slur that he made in the late 1980s. The Chief's recent statement about his remarks in the late 1980s made his prior statement relevant to the current charges of racial discrimination, retaliation for filing charges of racial discrimination and his actual motivation for his actions toward the Plaintiff.

The City next makes a series of challenges, citing Sixth Circuit precedents about the evidence and the viability of Plaintiff's claims. First, for a racially hostile environment claim, the jury is required to consider the totality of circumstances to evaluate whether the work

5

environment violated Title VII. Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993). For Plaintiff's Title VII claim of retaliation, "[t]here is nothing in the law of retaliation that restricts the type of retaliatory acts that might be visited upon an employee...". Knox v. State of Indiana, 93 F.3d 1327, 1334 (7th Cir. 1996). The racially discriminatory discipline in this action included Plaintiff's termination with a loss of pay, that clearly is an adverse employment action. Burlington Industries v. Ellerth, 524 U.S. 742, 761 (1998)(" [a] tangible employment action constitues a significant change in employment status, such as ...firing...or a decision causing a significant change in benefits."). Plaintiff's claims included a failure to promote claim that is an actionable claim under Title VII. Id ( " [a] tangible employment action constitutes a significant change in employment status, such as ... failing to promote...".). With these claims, the evidence cited by the City was admissible for a number of Plaintiff's claims. These contentions are meritless

As to the admission of evidence of the Austion verdict at the trial in this action, the City's counsel's cross-examination of the City's human relations representative elicited testimony that the City's investigation of the racial discrimination complaints showed those complaints to lack merit. The City's counsel elicited similar testimony about the EEOC decisions on these complaints. In the Court's view, defense counsel's questioning of his witness and the witness's response, opened the door to questions about the merits of Austion's complaint that resulted in a favorable jury verdict. The Court had taken measures to avoid any mention of the prior Austion verdict in this action. Yet, defense counsel's assertions and his witness's response made the Austion verdict relevant. The Court instructed the jury of the limited purpose for which this evidence was admitted and directed the jury to decide this case upon the evidence in this action

of what happened to this Plaintiff.

Finally, contrary to the City's assertions, the trial record contains many references to the City's investigations of the officers' complaints of racial discrimination and retaliation. The Court made it very clear to counsel that the Court did not have any concerns with the introduction of testimony about investigations by the City on these issues. This contention is wholly without merit.

The City next argues that under Tennessee Governmental Tort Liability Act ("TGTLA") and decisions thereunder, the City is immune from liability on Plaintiff's claims of outrageous conduct and malicious harassment. The GTLA states in pertinent part:

> Immunity from of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of . . .
>
> * * *
>
> (2) false imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy, or civil rights[.]

Tenn. Code Ann. § 29-20-205.

Under the TGTLA, a "governmental entity" is defined as follows:

> any political subdivision of the state of Tennessee including, but not limited to, any municipality, metropolitan government, county, utility district, school district, nonprofit volunteer fire department receiving funds appropriated by a county legislative body or a legislative body of a municipality, human resources agency, public building authority, and development district created and existing pursuant to the constitution and laws of Tennessee, or any instrumentality of government created by any one (1) or more of the named local governmental entities or by an act of the general assembly[.].

Tenn. Code Ann. § 29-20-102(3).

7

For the immunity defense to the outrageous conduct and malicious harassment claims, the Defendant did not assert any state law immunity at any point prior to the jury's verdict. The Defendant did not assert this immunity defense in its answer in either of the two actions, 3:01-1186, Docket Entry No. 10 Answer at pp. 4-8, Case No. 3:04-0603 (Docket Entry No. 8); nor in its motion for summary judgment 3:01-1186 (Docket Entry Nos. 35 and 36); nor in its proposed pretrial order or the case management order 3:01-1186 (Docket Entry No. 125); nor in response to the jury instructions or jury verdict form.

This action arises under Title VII, federal law, and even with pendent state law claims, federal procedural rules govern. Hanna v. Plummer, 380 U.S. 460, 467 (1965). A party's failure to assert a defense in its answer can constitute a waiver under Fed. R. Civ. P. 8(c). Scott v. Collins, 286 F.3d 923, 927-28 (6th Cir. 2002), including on issues and defenses of qualified immunity, English v. Dyke, 23 F.3d 1086, 1090 (6th Cir. 1994)("The [immunity] defense is subject to the same procedural rules as other defenses.... Moreover, the trial court has discretion to find a waiver if a defendant fails to assert the defense within time limits set by the court or if the court otherwise finds that a defendant has failed to exercise due diligence or has asserted the defense for dilatory purposes.") (citations omitted) as well as on a defense of municipal immunity under state law. Simmons v. City of Philadelphia, 947 F.2d 1042, 1084-86 (3rd Cir. 1991).

Thus, the Court concludes that the City's failures to assert its state law immunity in its answer or by motion for summary judgment or in its version for the case management order or final pretrial order or in response to the jury instructions constitute a waiver under Rule 8(c). This contention is without merit.

8

As to the sufficiency of the proof to support the jury's verdict on these state law claims, the proof of the noose in the Plaintiff's work area and the racially hostile work environment found by the jury are sufficient to support the jury's verdict. Plaintiff's testimony of the emotional effects of this offensive conduct on him is sufficient under state law to support the jury's damages award, Miller v. Wilbanks, 8 S.W.3d 607, 615, (Tenn. 199) as well as under Title VII. Turic v. Holland Hospitality Inc. 85 F.3d 1211, 1215 (6th Cir. 1996).

### B. Motion for Remittitur

In this motion, the City argues that the jury's verdict is excessive and the result of sympathy and for remittitur passion, citing Moore v. Freeman, 355 F.3d 558, 564 (6th Cir. 2004). The Court respectfully disagrees. In a word, the jury in the Austion action rendered a similar verdict. The proof in this action warranted the damages awarded by the jury. This motion should be denied.

### C. Motion for Backpay and Prejudgment Interest

In this motion (Docket Entry No. 23), Plaintiff seeks back pay for his termination in October 21, 2003 that lasted until February 3, 2004, the date of his reinstatement after his successful appeal to the City Council. Plaintiff cites the jury's verdict and the City's attorney's advice that Plaintiff could recover back pay in his federal action. Plaintiff's Trial Exhibits 17, 18 and 19. Plaintiff cites his pay at the time was between $3,000 to $3,100 per month. Plaintiff's Exhibit 13. The Defendant responds that Plaintiff has not offered adequate proof of his salary and the jury awarded damages for the Defendant's discriminatory disciplinary actions against the Plaintiff.

Under Title VII, back pay is an equitable remedy that is presumptively available for the successful plaintiff, if factually appropriate. Teamsters v. Terry, 494 U.S. 558, 572 (1990). Plaintiff must present adequate proof of the amount of this pay. Wooldridge v. Marlene Industries Corp., 875 F.2d 540, 547 (6th Cir. 1999). Prejudgment interest is to make the Plaintiff whole for his job loss. EEOC v. Wilson Metal Casket, 24 F.3d 836, 841-42 (6th Cir. 1994).

As applied here, the Court finds that the jury verdict on the Defendant's discriminatory disciplinary actions against Plaintiff, including this termination, justifies a back pay award. Plaintiff has provided adequate proof of his pay at that time. The City attorney conceded the availability of this remedy in this action. Here, to make Plaintiff whole for his salary loss due to racially discriminatory conduct, the Court deems an award of back pay and prejudgment interest appropriate. Plaintiff's monthly pay of approximately $3,000 yields an average daily pay of $150.00 and his termination was for 135 days for a backpay award of $20,280, plus prejudgment interest from the date of his termination until paid as determined by federal law.

### D. Plaintiff's Motion for Additur

In this motion, (Docket Entry No. 22), Plaintiff argues that the jury's damages award of $65,000 should be multiplied to reflect the same three claims under THRA based upon his jury's findings on his Title VII claims. The Court respectfully disagrees. Title VII and the THRA addresses the same injury and share the elements of damages. Thus, to award the same damages multiple times for the same conduct, is inappropriate.

### E. Plaintiff's Motion for Attorney Fees and Costs

In this motion, (Docket Entry No. 23) as the prevailing party, Plaintiff seeks attorney fees of $219,441.00 and costs of $12,586.56. Plaintiff's counsel who was admitted to the bar in 1991.

cites his experience in employment discrimination cases since 1995. Plaintiff seeks $250.00 per hour for his work in this action. Plaintiff notes that the Defendant hired seven counsel over the course of the litigation. Plaintiff unsuccessfully approached thirteen counsel to take his case before his present counsel accepted employment on a contingency basis. Plaintiff's counsel has prior experience and now specializes in employment discrimination cases and has successfully tried cases to large verdicts.

The Defendant responds in sum, that four of the attorney's charges are excessive; that $580.00 of the costs and $10,595.00 in attorney fees were incurred in the local administrative hearing are not recoverable as a matter of law; that the attorney charge for August 1, 2005 of $875.00 or $800.00 is duplicative; that charges due to Plaintiff's need of additional time and for personal delivery of filings to the Clerk's office are excessive; and that $1,050 in charges are unnecessary or insufficiently identified. Finally, the Defendant contends that an hourly rate of $200.00 for Plaintiff counsel is appropriate.

Under 42 U.S.C. § 2000e-5(k), a reasonable attorney's fees can be awarded to the prevailing party in a Title VII action. A prevailing party may also be defined as a party who achieves a substantial portion of the relief sought. Farrar v. Hobby, 506 U.S. 103 (1992). A party need not prevail on all issues to be deemed a "prevailing party." Clark v. Mindis Metals, 1996 WL 616677 at*1, *10 (6th Cir. 1996).

The amount of attorney fees to be awarded is a lodestar "calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." Blanchard v. Bergeron, 489 U.S. 87, 94 (1989) (quoting Blum v. Stenson, 465 U.S. 886, 888, 104 (1984). This calculation can be adjusted in light of other factors. Blanchard, 489 U.S. at

11

94." A "strong presumption that the lodestar represents the reasonable fee." City of Burlington v. Dague, 505 U.S. 557, 562 (1992).

As to what constitutes a reasonable attorney fee, the Sixth Circuit stated in United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Ass'n v. G & M Roofing and Sheet Metal Co. Inc., 732 F.2d 495 (6th Cir. 1984), that

> the determination of a reasonable [attorney's] fee must be reached through evaluation of a myriad of factors, all within the knowledge of the trial court, examined in light of the congressional policy underlying the substantive portions of the statute providing for the award of fees.

Id. at 501. Additionally, "[c]ourts should not place an undue emphasis on the amount of plaintiff's recovery because an award of attorney['s] fees . . . 'encourage[s] the vindication of congressionally identified policies and rights.'" Fegley v. Higgins, 19 F.3d 1126, 1134-35 (6th Cir. 1994) (quoting United Slate, 732 F.2d at 503).

The determination of a reasonable fee is based upon "the prevailing market rates in the relevant community." Blum, 465 U.S. at 895. The applicant's rate must be the prevailing rate in the community for similar services by lawyers who are comparably skilled and experienced. Glover v. Johnson, 934 F.2d 703, 718 (6th Cir. 1991).

In Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), the Fifth Circuit enunciated twelve (12) factors that trial courts may consider in calculating reasonable attorney-fee awards. The Supreme Court has determined that "Johnson's 'list of 12'... provides a useful catalog of the many factors to be considered in assessing the reasonableness of an award of attorney's fees...." Blanchard, 489 U.S. at 93. These 12 factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other

12

employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

Id. at 91 n. 5. A trial court may apply the Johnson factors during its initial calculation of the attorney-fee award. See United Slate, 732 F.2d at 502-03, 503 n.3 (trial court should first conduct the initial evaluation, then examine the award against several factors, including the Johnson factors, but also noting that trial courts usually subsume the analysis of those factors within the initial calculation).

Excessive or duplicitous billing is not permitted. Coulter v. Tennessee, 805 F.2d 146, 152 (6th Cir. 1986). As to any claims for excessive hours in application for attorney fees, in Coulter, the Court of Appeals identified several factors to be considered:

Three very different kinds of issues can arise concerning excessive hours: (1) factual questions about whether the lawyer actually worked the hours claimed or is padding the account; (2) legal questions about whether the work performed is sufficiently related to the points on which the client prevailed as to be compensable; and (3) mixed questions about whether the lawyer used poor judgment in spending too many hours on some part of the case or by unnecessarily duplicating the work of co-counsel.

805 F.2d at 150-51. "[D]istrict courts have the discretion to take ... duplication into account by making a simple across-the-board reduction by a certain percentage." Hudson v. Reno, 130 F.3d 1193, 1208 (6th Cir. 1997).

After an independent review of the Plaintiff's application for attorney fees in light of Johnson factor, the Court finds that the circumstances here factors justify the attorney fee award sought with some adjustments. The nature of Plaintiff's claims required substantial time and

13

skill. These claims are very difficult to establish given the type of proof required. The time expended is reasonable. This action involved several sensitive issues of public policy. Plaintiff's counsel undertook representation on a contingency basis. Plaintiff's counsel demonstrated exceptional skills for a difficult trial and obtained an excellent result by prevailing on five of his six claims. The hourly rate sought is reasonable for this district. See Reed v. Cracker Barrell Old Country Store, 171 F.Supp.2d 751, 759-60. (M.D. Tenn. 2001) (awarding hourly rates between $225 and $175 in 2001 in a Title VII action).

As to Defendant's objections, with certain exceptions, the Court finds the amount of time expended and costs incurred to be reasonable for this litigation. The Court agrees that $10,595 in attorney fees related to the administrative expense and $550 in costs related to the administrative hearing are not recoverable as a matter of law. Webb v. County Bd. Of Edu., 471 U.S. 234, 241-43 (1985). The Court finds that the attorney's charge of $800 for August 1, 2005 is duplicative and is not recoverable as a matter of law. Id.

Thus, the Court awards Plaintiff attorney fees in the amount of $208,016.00 and his costs of $11,247.69.

An appropriate Order is filed herewith.

**ENTERED** this the ___ day of February, 2006.

WILLIAM J. HAYNES, JR.
United States District Judge